IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | NO. 18-253 |
| ANMOL SINGH KAMRA | : | |

**MEMORANDUM**

**SURRICK, J.**                                                                                                                        **MAY 21**, **2021**

After a ten-day jury trial, Defendant Anmol Singh Kamra was found guilty of conspiracy to distribute controlled substances, in violation of 21 U.S.C. § 846. Defendant worked at a pharmacy and processed fake oxycodone prescriptions. He was sentenced to 18 months' imprisonment, which was a significant downward departure from the sentencing guideline range he faced. Defendant appealed the judgment and sentence. He now moves for bail pending appeal, or in the alternative, an extension of his voluntary surrender date. (ECF No. 145.) He contends that "exceptional reasons" warrant release pending his appeal pursuant to 18 U.S.C. § 3145(c). For the following reasons, Defendant's Motion will be denied.

**I. BACKGROUND**

On June 13, 2018, the Government filed an Indictment charging Defendant with conspiracy to distribute oxycodone, a Schedule II controlled substance, outside the usual course of professional practice and for no legitimate medical purpose, in violation of 21 U.S.C. § 846. The Government alleged that from December 2012 through about March 2016, Defendant, a pharmacist assistant at Campus Pharmacy in Philadelphia, conspired with George Fisher, a physician, and Frank Brown, to illegally distribute thousands of oxycodone pills to drug users. (ECF No. 1.) Pursuant to the scheme, Defendant would fill fake oxycodone prescriptions

containing sham patient names. The scripts were written by Fisher. Defendant would give the oxycodone pills to Brown, who in turn sold the pills in street level drug deals. (*Id*.) Fisher and Brown were charged separately. Both pleaded guilty to their involvement in the conspiracy and cooperated with the Government.

After ten days of evidence and testimony and two days of deliberations, the jury found Defendant guilty.

On March 9, 2021, Defendant's motion for a new trial under Federal Rule of Criminal Procedure 33 was denied. (Court's Mar. 9 Mem., ECF No. 135.) A more in-depth recitation of the facts of this case can be found in the Court's March 9 Memorandum. (*Id*.) After reviewing all the evidence and testimony, we concluded that the jury verdict was not contrary to the weight of the evidence. (*Id*.)

On March 11, 2021, Defendant was sentenced to 18 months of incarceration followed by three years of supervised release. (ECF Nos. 137, 139.) At the sentencing hearing, the Court did not order that Defendant be detained. Instead, the Court permitted pretrial release to continue and scheduled a date for Defendant to voluntarily surrender to the Federal Bureau of Prisons ("BOP"). (ECF No. 138.)

On March 23, 2021, Defendant received notice that he was designated to serve his sentence at North Lake Correctional Institution, in Baldwin Michigan, which is approximately 770 driving miles from Defendant's home in Newtown Square. At Defendant's request, and with no objection from the Government, the Court made a recommendation to the BOP "that the defendant be designated to a facility close to his family, specifically his wife and his brother, in Newtown Square, Pennsylvania." (ECF No. 142.) Notwithstanding the Court's recommendation, the BOP advised counsel for Defendant that it would not change Defendant's

designation. (Def.'s Mot. 4, ECF No. 145.)

Defendant now moves for bail pending the outcome of his appeal to the Third Circuit. He contends that his BOP designation, which is 770 miles from his family, and the fact that the Bureau of Immigration and Customs Enforcement ("ICE") will place a detainer on him once he is in the BOP's custody constitute "exceptional reasons" warranting his continued release pending his appeal. The Government opposes the Motion. (ECF No. 147.)

## II. DISCUSSION

The statute addressing bail pending appeal, 18 U.S.C. § 3143(b)(2), mandates that a defendant be detained if he has been convicted of an offense described in subparagraphs (A), (B), or (C) of 18 U.S.C. § 3124(f)(1) and has been sentenced to a term of imprisonment.[1] Subparagraph (C) if § 3142(f)(1) includes "an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.) . . . ."

Defendant does not dispute that his conviction and sentence mandate his detention under § 3143(b)(2). He was convicted of a controlled substances offense that carries a statutory maximum of ten years or more. He argues instead that a safety valve provision found in 18 U.S.C. § 3145(c) permits his release pending appeal. Section 3145(c), entitled "Appeal from a release or detention order" provides:

> An appeal from a release or detention order, or from a decision denying

---

[1] The statute states:

(2) The judicial officer shall order that a person who has been found guilty of an offense in a case described in subparagraph (A), (B), or (C) of subsection (f)(1) of section 3142 and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari, be detained.

18 U.S.C. 3143(b)(2).

3

> revocation of amendment of such an order, is governed by the provisions of section 1291 of title 28 and section 3731 of this title. The appeal shall be determined promptly. A person subject to detention pursuant to section 3143(a)(2) or (b)(2), and who meets the conditions of release set forth in section 3143(a)(1) or (b)(1), may be ordered released, under appropriate conditions, by the judicial officer, if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate.

18 U.S.C. § 3145(c).

The Government argues that district courts lack the authority to grant release pending appeal under § 3145(c) because the provision itself limits that authority to appellate courts.[2] The Government also argues that even if Defendant could avail himself of § 3145(c), he has failed to meet the statute's heavy burden of establishing that bail pending appeal is appropriate.

### A. Court's Authority to Grant Release Pending Appeal under § 3145(c)

We will first address whether 18 U.S.C. § 3145(c) permits district courts the authority to grant release pending appeal. The Government contends that, by its language, § 3145(c) applies to courts of appeals and not to district courts. In other words, the "judicial officer" who may order a release for a person subject to detention refers to circuit court judges and not district court judges.

The Third Circuit has not yet weighed in on whether district courts have discretionary authority to apply § 3145(c). However, the overwhelming majority of courts that have addressed the issue have concluded that district courts do possess discretionary authority under § 3145(c).

---

[2] The Government also contends that § 3145(c) is not available to Defendant because it applies to appeals of release or detention orders and not to a motion for bail in the first instance. Although the statute is not worded clearly, and the title of the subsection implies that it only applies to appeals of release or detention orders, the statutory language contained in the subsection creates a much broader application. It states that "[a] person subject to detention pursuant to section 3143(a)(2) or (b)(2), and who meets the conditions of release set forth in section 3143(a)(1) or (b)(1), may be ordered released . . . ." Defendant is subject to mandatory detention and has been provided a surrender date. It would make little sense for Defendant to have to wait until he is actually in BOP's physical custody to file a motion under §3145(c).

Each court of appeals that has addressed the issue has concluded that district courts have the authority. *See United States v. Meister*, 744 F.3d 1236, 1237 (11th Cir. 2013) ("We now explicitly hold, given the unambiguous statutory language and unanimous agreement of our sister circuits that have considered the issue, that a district court has the authority to release a defendant being detained pursuant to § 3143(a)(2) upon a showing of 'exceptional reasons' under § 3145(c)."); *United States v. Christman*, 596 F.3d 870, 871 (6th Cir. 2010); *United States v. Goforth*, 546 F.3d 712, 715 (4th Cir. 2008) (holding that "district judges unambiguously qualify as 'judicial officers' under § 3145(c)"); *United States v. Garcia*, 340 F.3d 1013, 1014 n.1 (9th Cir. 2003); *United States v. Mostrom*, 11 F.3d 93, 95 (8th Cir. 1993) (per curiam) (holding that a district court had initial authority to make a § 3145(c) determination); *United States v. Carr*, 947 F.2d 1239, 1240 (5th Cir. 1991) ("We see no reason why Congress would have limited this means of relief to reviewing courts. Thus we conclude that the "exceptional reasons" language of § 3145 may be applied by the judicial officer initially ordering such mandatory detention, despite its inclusion in a section generally covering appeals."); *United States v. DiSomma*, 951 F.2d 494, 496 (2d Cir. 1991); *United States v. Jones*, 979 F.2d 804, 806 (10th Cir. 1992) (per curiam); *United States v. Herrera-Soto*, 961 F.2d 645, 647 (7th Cir. 1992) (per curiam).

District courts within the Third Circuit are divided. However, the majority of district courts that have addressed the issue have determined that they have the authority to examine whether exceptional circumstances warrant release under § 3145(c). *See United States v. Stevens*, 454 F. Supp. 3d 472, 477 n.7 (E.D. Pa. 2020) (concluding that district courts have authority to apply § 3145(c) and considering merits of defendant's arguments); *United States v. Porter*, 442 F. Supp. 3d 903, 906-07 (W.D. Pa. Mar. 5, 2020) (holding that the court had

5

discretionary authority to apply § 3145(c)); *United States v. Wilson*, No. 17-0077, 2017 WL 1351399, at *2 (D.N.J. Apr. 7, 2017) (concluding that it has the authority to release defendant for "exceptional reasons" under § 3145(c)); *United States v. Williams*, 903 F. Supp. 2d 292, 301 (M.D. Pa. 2012) (providing statutory and legislative analysis on § 3145(c) and concluding that it "possesses the discretion to release a defendant pending sentencing or appeal for 'exceptional reasons'"); *United States v. Gagliardi*, No. 04-0796, 2008 WL 155057, at *1 (E.D. Pa. Jan. 14, 2008) (assuming without deciding that the court had authority to grant release under § 3145(c)); *United States v. Lieberman*, 496 F. Supp. 2d 584, 587 (E.D. Pa. 2007) (assuming that the court had "the power to apply the 'exceptional reasons' provision of § 3145(c)"). A few district courts in our Circuit have adopted the minority view in concluding that § 3145(c) is meant for appellate courts and not for district courts. *See United States v. Castro*, No. 15-362, 2016 WL 3446660, at *3 (E.D. Pa. June 23, 2016) (holding that the court lacked authority to hear defendant's argument under § 3145(c)); *United States v. Salome*, 870 F. Supp. 648, 652 (W.D. Pa. 1994) ("[T]he court finds that the jurisdiction established by § 3145(c) is appellate jurisdiction.").

We believe that if presented with the question, the Third Circuit would align itself with the nine other Circuit Courts that have addressed this issue and conclude that a district Court has the authority to grant a release pending sentencing or appeal under § 3145(c). Accordingly, we reject the Government's argument that we lack the authority to consider Defendant's request for release pending appeal. We will consider Defendant's arguments on the merits.

### B.  Defendant has Not Demonstrated that Release Pending Appeal is Appropriate under § 3145(c)

Section 3145(c) states that "a person subject to detention pursuant to section 3143(a)(2) or (b)(2), and who meets the conditions of release set forth in section 3143(a)(1) or (b)(1), may be ordered released, under appropriate conditions, by the judicial officer, if it is clearly shown

that there are exceptional reasons why such person's detention would not be appropriate." 18 U.S.C. § 1345(c). Thus, Defendant must satisfy all the requirements of § 3143(b)(1) and demonstrate exceptional reasons that "clearly" warrant release. The burden is on Defendant to demonstrate that he qualifies for release pending his appeal under the safety valve provision. *United States v. Smith*, 34 F. Supp. 3d 541, 555 (W.D. Pa. 2014) (noting the "high burden" placed on defendants to demonstrate entitled to release pending appeal under § 1345(c)).

1. Conditions of Release under 1343(b)(1)

Defendant must first demonstrate that he satisfies all of these conditions of § 3143(b)(1): (1) by clear and convincing evidence, that he is not likely to flee or pose a danger to the safety of any other person or the community if release; (2) that his appeal was not taken for the purpose of delay; and (3) that his appeal raises a "substantial question of law or fact likely to result in" a reversal, an order for a new trial, a sentence that does not include imprisonment, or a reduced sentence of imprisonment.[3] Although Defendant has established the first two conditions, he has

---

[3] Section 3143(b) states in its entirety:

(b) Release or detention pending appeal by the defendant.--(1) Except as provided in paragraph (2), the judicial officer shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari, be detained, unless the judicial officer finds—
    (A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c) of this title; and
    (B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in—
        (i) reversal,
        (ii) an order for a new trial,
        (iii) a sentence that does not include a term of imprisonment, or
        (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

18 U.S.C. § 3143(b)(1).

failed to demonstrate the third.

With regard to the first condition, by not ordering Defendant detained after his sentencing, we have already determined that Defendant did not pose a flight risk or a danger to the safety of others. Given his strong community ties and the support of his family, we continue to believe that Defendant does not pose a flight risk. Defendant is also not a danger to others. Although he was convicted of a crime involving the distribution of narcotics, he committed no physical violence, and he has been compliant with all pretrial and posttrial release conditions.

As to the second condition, we do not believe that Defendant's appeal to the Third Circuit was intended as a delay tactic. During his trial and in his posttrial motion, Defendant zealously argued that there was insufficient evidence to convict him. Although both the jury and the Court disagreed with Defendant, it is not surprising that Defendant has chosen to raise this same argument in an appeal to the Third Circuit.

As to the third condition, Defendant has failed to articulate any appellate issue that raises a "substantial question of law or fact likely to result in" a reversal, new trial, or reduced sentence. Defendant raises three issues on appeal that he contends qualify under § 3143(b)(1): (1) whether the verdict in this case is against the weight of the evidence; (2) whether this Court abused its discretion in refusing to admit documents from the Pennsylvania Prescription Drug Monitoring Program ("PDMP"); and (3) whether the Court's charge on the good faith defense improperly shifted the burden of persuasion onto Defendant.

A substantial question requires that the issue on appeal be "significant in addition to being novel, not governed by controlling precedent, or fairly doubtful." *United States v. Smith*, 793 F.2d 85, 88 (3d Cir. 1986); *see also Gagliardi*, 2008 WL 155057, at *2 (denying motion for

bail pending appeal of his conviction where defendant fails to present any substantial questions of law or fact).

As to the Defendant's first appellate issue—whether the verdict in this case was against the weight of the evidence—we have already rejected this argument. In or March 9, 2021 Memorandum denying Defendant's posttrial motion on this basis, we detailed the evidence and testimony presented during trial. We concluded that "the evidence and testimony supported the jury's finding of guilt" and that "the jury's verdict was not contrary to the weight of the evidence." (Court's Mar. 9 Mem 14.)

Defendant's second appellate issue is whether the Court improperly refused to admit documents from PDMP, which is a database of all prescriptions for controlled substances filled within Pennsylvania. *See Prescription Drug Monitoring Program (PDMP)*, available at https://www.health.pa.gov/topics/programs/PDMP/Pages/PDMP.aspx (last accessed May 20, 2021). The database is maintained by Pennsylvania and is intended "[t]o help prevent prescription drug abuse and protect the health and safety of our community" by collecting "information on all filled prescriptions for controlled substances: so that "health care providers safely prescribe controlled substances and [] patients get the treatment they need." *Id.* Defendant attempted to admit records from the PDMP database of individuals who had prescriptions filled at Campus Pharmacy. Defendant sought to have the documents admitted through defendant witness, John Ivey, a pharmacist who worked with Defendant. (Nov. 20 Trial Tr. 224-230, ECF No. 111.) Defendant first presented the documents to the Government for the first time on the day that Mr. Ivey testified at the trial. (*Id*. at 228.)[4] John Ivey retrieved the

---

[4] Defendant intended to show that some of the patients who had prescriptions filled by Defendant at Campus Pharmacy had narcotics prescriptions filled at other pharmacies after the conclusion of the conspiracy charged in the Indictment.

9

documents from the PDMP website believing they were responsive to a subpoena request served on him. (*Id*. at 226-27.)

Defendant sought to admit the PDMP records under the business records exception to the hearsay rule and attempted to authenticate them with Mr. Ivey serving as the custodian of records. The Government objected on grounds of lack of foundation and authentication. (*Id*. at 227-28.) The Government stated that the PDMP records contain information from other pharmacies, not just Campus Pharmacy, and thus, Mr. Ivey was not a proper custodian of records. (*Id*. at 228.) The Court sustained the Government's objection to the PDMP records. (Nov. 21 Trial Tr. 5, ECF No. 112.) The Court determined that Defendant did not provide a valid reason to admit the records and that Mr. Ivey was not a proper custodian of these records. (*Id*.) The Court further reasoned that "[t]he proper way to establish what these records might establish would be to call the individuals themselves . . . and ask them questions about whether they continued to get the prescriptions over a period of time." (*Id*.)

Defendant's appellate issue does not raise a substantial question of law or fact. Whether documents constitute business records and have been properly authenticated through an appropriate custodian of records is not a novel issue. Even if it did raise a substantial question, the Court's sustaining the Government's objection and declining admission of the PDMP records was proper. Federal Rule of Evidence 803(6) allows an exception to the hearsay rule for a business record if it is "made at or near the time by, or from information transmitted by, someone with knowledge," "kept in the course of a regularly conducted business," and if it was the regular practice of that business activity to make the record. Fed. R. Evid. 803(6)(A)-(C). Rule 803(6) also requires that "all of these conditions are shown by the testimony of a custody or other qualified witness." *Id*. at 803(6)(D). The PDMP records were not Campus Pharmacy records.

Therefore, they were not kept in the course of regularly conducted business. John Ivey was not qualified to serve as a custodian of these records.

Finally, as to Defendant's third appellate issue, Defendant contends that the Court erred "when it failed to advise the jury, when charging on the defendant's good faith defense, that in order to acquit, it need not 'find' that [Defendant] 'acted in good faith' or determine 'what the defendant believed,' but rather only need harbor a reasonable doubt on that score." (Def.'s Mot. 5.)

Defendant's argument is perplexing for a few reasons. First, the good faith defense instruction given to the jury was nearly word-for-word the instruction proposed by Defendant prior to trial. (*See* ECF No. 55.) If Defendant found the language of the defense objectionable, it should not have proposed that the language be read to the jury. Second, the Court's instruction tracked the language of the Third Circuit Model Jury Instruction on good faith defenses. *See* 3d Cir. Model Jury. Inst. 5.07. Moreover, the Third Circuit has stated that it has "a hard time concluding that use of [its] own model jury instructions can constitute error." *United States v. Petersen*, 622 F.3d 196, 208 (3d Cir. 2010). Third, contrary to Defendant's contention, the Court's good faith defense is not inconsistent with Third Circuit precedent. Defendant relies on *United States v. Greenspan*, 923 F.3d 128, 147-148 (3d Cir. 2019), in arguing that the Court's good faith instruction was improper. In *Greenspan*, the Third Circuit concluded that the district court's instruction on the advice-of-counsel defense was erroneous because the wording placed the burden of proving the defense on the defendant. *Id*. *Greenspan* has no application here. When charging the jury, the Court made clear that the burden rests with the Government and not with Defendant:

> Now, ladies and gentlemen, the Defendant does not have the burden of proving
> good faith. Good faith is a defense because it is inconsistent with the mental state

11

elements of conspiracy. As I've told you, it is the Government's burden to prove beyond a reasonable doubt each of the elements of the offense, including the mental state elements, in deciding whether the Government has proved that the -- including the mental state elements.

(Nov. 25, 2019 Trial Tr. 121, ECF No. 114.)

In any event, because the Court's good faith instruction was consistent with the Third Circuit's Model Jury Instructions, Defendant will not be able to demonstrate that it constituted plain error.[5] Under the plain error standard, Defendant would have to show that the district court "committed error that was fundamental and highly prejudicial, such that the instructions failed to provide the jury with adequate guidance, and the District Court's refusal to consider the issue would result in a miscarriage of justice." *Riga*, 208 F.3d at 426. Defendant is unable to show any error with the Court's good faith instruction, let alone that it was highly prejudicial to his case. *See Petersen*, 622 F.3d at 208.

### 2. Exceptional Circumstances

Even if Defendant could demonstrate that he satisfies all the conditions of § 3143(b)(1), his motion for release pending appeal under the safety valve provision of § 3145(c) must nevertheless be denied. Defendant has failed to show that there are "exceptional reasons" why his detention would be inappropriate.

The statute does not define "exceptional reasons," and the Third Circuit has yet to provide specific guidance on what constitutes an exceptional reason justifying release under § 3145(c). Other courts have provided some guidance. "The plain meaning of exceptional is "out of the ordinary course, unusual, special."" *Castro*, 2016 WL 3446660, at *4 (quoting

Oxford English Dictionary (2nd ed. 1989)). "The test under § 3145(c) is necessarily a flexible one, and district courts have wide latitude to determine whether a particular set of circumstances qualifies as 'exceptional.'" *United States v. Smith*, 34 F. Supp. 3d 541, 553-54 (W.D. Pa. 2014) (quoting *United States v. Lea*, 360 F.3d 401, 403 (2d Cir. 2004)). "Thus, determining whether the circumstances of a given case constitute 'exceptional reasons' is a fact-intensive inquiry within the discretion of the district court, and for which a case-by-case evaluation is essential." *Id*. (internal quotation marks and citations omitted).

Defendant argues that his case presents exceptional reasons justifying his release pending appeal. He contends that his family and community ties and the fact that he was designated to a facility over 700 miles away, present exceptional reasons. He relies on Section 601 of the First Step Act, which provides:

> The Bureau of Prisons shall designate the place of the prisoner's imprisonment, and shall, subject to bed availability, the prisoner's security designation, the prisoner's programmatic needs, the prisoner's mental and medical health needs, any request made by the prisoner related to faith-based needs, recommendations of the sentencing court, and other security concerns of the Bureau of Prisons, place the prisoner in a facility as close as practicable to the prisoner's primary residence, <u>and to the extent practicable, in a facility within 500 driving miles of that residence</u>.

18 U.S.C.A. § 3621(b) (emphasis added).

Despite Defendant's contentions, the BOP is not required to place defendants within 500 miles. They must attempt to do so to the extent it is practicable. The Court recommended that Defendant be placed in an institution close to his family. The BOP did not follow the Court's recommendation. For the Court to now grant release as an exceptional reason would be an

---

[5] The parties agree that the plain error standard applies. Defendant did not raise an objection to the good faith instruction during the trial. *See Alexander v. Riga*, 208 F.3d 419, 426 (3d Cir. 2000) (stating that "[i]f the party claiming error in the jury instructions did not make a

improper invasion into the BOP's discretion. *See* 18 U.S.C. § 3621(b) ("The Bureau of Prisons shall designate the place of the prisoner's imprisonment."). We sympathize with Defendant that he will be far away from his family. However, there is nothing exceptional about his family and community ties and the hardships his family will face in traveling to see him. *See Castro*, 2016 WL 3446660, at *4 ("After all, personal hardships are a likely consequence of the criminal justice system."); *United States v. Lippold*, 175 F. Supp. 2d 537, 541 (S.D.N.Y. 2001) ("Although the need to follow Congress' mandate regrettably results in separating [the defendant] from his family and work, such is the case with every defendant facing a custodial sentence.").

Defendant also contends that the fact that ICE will place a detainer on him once he is detained presents an exceptional reason warranting bail pending appeal. This argument is speculative and without merit. Even if Defendant was subject to a detainer once incarcerated, it is not the Court's role to interfere with ICE's removal process.

Defendant's request for an extension of his voluntary surrender date until late August 2021 is also denied. He states that on August 23, 2021, 120 days will have passed since the BOP designated the North Lake Correctional Institution as the prison to which he should surrender. According to Defendant, under BOP policy, a designation that is not fulfilled within 120 days is subject to reconsideration and may be cancelled. Again, it is not Court's role to interfere with the BOP's prison designation.[6]

---

timely objection," the appellate court reviews for plain error). Indeed, the instruction given by the Court was the very instruction proposed by Defendant.

### III. CONCLUSION

For the foregoing reasons, Defendant's Motion for Bail Pending Appeal must be denied. An appropriate order follows.

**BY THE COURT:**

*/s/ R. Barclay Surrick*
**R. BARCLAY SURRICK, J.**

---

[6] We will permit a 20-day extension of the surrender date in light of the fact that Defendant is scheduled to surrender in just five days.